## Case No. 161.

### In re ALEXANDER.

[1 Lowell, 470;[1] 4 N. B. R. 178, (Quarto, 145;) 18 Pittsb. Leg. J. 81; 3 Amer. Law T. 280; 1 Amer. Law T. Rep. Bankr. 238.]

District Court, D. Massachusetts. Sept., 1870.

BANKRUPTCY—SECURED CREDITOR—GIFT TO WIFE —LAND IN DEBTOR'S NAME—PAROL EVIDENCE.

1. One who holds the note of the bankrupt not yet due, has a good petitioning creditor's debt.

2. A creditor who holds security from the supposed bankrupt may petition for adjudication against him, if the security falls short of the debt by two hundred and fifty dollars or more.

[Cited in Re Stansell, Case No. 13,293; In re Jaycox, Id. 7,240; In re Crossette, Id. 3,435; In re California Pac. R. Co., Id. 2,315.]

3. It is no defense to a petition in invitum that the petitioning creditor is the only creditor of the supposed bankrupt.

4. A gift of all a debtor's property to his wife is an act of bankruptcy.

5. If land stands in the name of the debtor and is conveyed by him for the apparent purpose of avoiding attachments, it is doubtful whether parol evidence ought to be received that the land was held only in trust.

6. It seems, that a creditor of a bankrupt holding security on the property of a third person, may prove for his whole debt without renouncing such security.

In bankruptcy. These petitions for involuntary bankruptcy against the several defendants were tried together by consent of the parties. The defendant, James F. Alexander, bought out the stock in trade of the petitioner, O'Connell, in February, 1869, for about twenty-four hundred dollars; of which five hundred dollars was paid down, and for the remainder the two defendants gave their joint and several promissory notes on one, two, three, and four years, with interest at eight per cent. a year, payable semiannually, secured by a mortgage on the stock in trade. William B. Alexander, the father of the other defendant, had no interest in the purchase, but joined in the notes for the greater security of the petitioner, and, as between the two defendants, was a surety only, [and is so alleged in that petition.][2]

In February, 1870, the first note became due and was paid, together with the interest on the whole debt. The next note will be payable in February, 1871. On the thirteenth of February, 1870, the father conveyed his dwelling-house and land at East Boston to his wife. He was not and never had been a trader, and he had no other estate or effects liable to seizure on execution, and owed no debts excepting to this petitioner. In March the son conveyed to his wife a dwelling-house and land which had stood in his name for about two years. Evidence was admit-

---

[1][Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

[2][From 4 N. B. R. 178, (Quarto, 45.)]

ted, de bene, to show that he held the house by gift from his father-in-law, upon an oral trust or understanding that it should be used, enjoyed, and conveyed for the benefit of the grantor's family, including the defendant's wife. The conveyance to the wife was made without the consent or knowledge of the father-in-law, who heard of it but lately, not long before this petition was filed, and testified that he acquiesced in the arrangement. This defendant owed no debts of any consequence, excepting the mortgage debt, and one to his aunt, of whom he borrowed the five hundred dollars paid out in the first instance towards the purchase of this stock. The evidence tended to show that this debt would not be pressed against him.

J. D. Ball, for petitioning creditor.
J. H. Bradley, for respondents.

LOWELL, District Judge. Several points of law have been ably discussed before me, and I will consider them in their order.

1. The fact that the petitioner's debt is not yet payable is not a valid answer to this proceeding. By section 39 all creditors whose debts are provable under the act may petition; and by section 19 debts existing, but not payable until a future day, are provable. [This is decisive. But I may add, that such has been the decision of the only court whose opinion I have seen.][3] It was so under the act of 1841. Barton v. Tower, [Case No. 1,085.] And the practice has always been so under the insolvent law of this commonwealth. It would be a sad defect in a bankrupt law if the rights of creditors depended on the time at which their debts matured.

2. The next objection is that a creditor who holds security cannot petition. Here an important distinction is to be noted. This creditor has no security upon the property of W. B. Alexander, and the language of section 20 is that a creditor who holds security upon the property of the bankrupt, shall be admitted to prove only for the balance, &c. This would seem to show that the petitioner has a provable debt for the full amount against the estate of the father, because his only security is on the estate of the son. Such has always been the practice in England, and I am much inclined to think it the true practice. If the surety pays the debt, he may be entitled to the benefit of the collateral security. But in bankruptcy it seems more just and equitable that the creditor should have the benefit of all his remedies, so that he may obtain his whole debt, if possible. If he is obliged to realize his security, and prove only for a balance, he will be losing the advantage for which he has stipulated, of the full credit of the surety. A contrary doctrine appears to have prevailed in Massachusetts. Lanckton v. Wolcott, 6 Metc. 305. But I am not prepared to say that I could follow that precedent, nor

that the statutes are precisely alike on this point. Judge Fox has ably vindicated what I believe to be the true doctrine under the bankrupt law. It is not necessary to decide the question in this case, for reasons which will presently appear.

3. The next question is whether a creditor who holds a mortgage upon the property of his debtor, can proceed against that debtor himself by petition in bankruptcy. By section 20 such a petitioner can be a creditor only for the balance, after deducting the value of the property, which value is to be ascertained by agreement with the assignee, or by a sale under direction of the court. The argument is that until an assignee is appointed it cannot be legally ascertained whether such a mortgagee is really a creditor or not. This appears to me too strict and literal a construction. Take the case of an admitted act of bankruptcy, and of creditors whose security is plainly inadequate. Are they to be without remedy? No better illustration than this case affords could be desired. If this creditor cannot petition there is no other person who is interested to do so, and after the six months have passed he is without remedy. I have known a case in which all the creditors were secured, and none of them adequately. The true intent and equity of the statute will be met by holding that when the security falls short of a full indemnity, by two hundred and fifty dollars, or more, thus leaving the amount of a petitioning creditor's debt practically unsecured, the debt is sufficient. This will be a question of fact like any other, and no more difficult to decide than such as often arise on a disputed account or other debt sufficient in kind. This is the law of England by the express words of 24 & 25 Vict. c. 134, § 97. I do not wish to be understood that a creditor holding collateral security may not petition, if he offers to surrender and cancel his security, nor that any security by attachment or other lien created by law would usually be a bar; but my opinion is that full and adequate security created by contract, must be abandoned, and that if inadequate it must be so to the extent above mentioned. [Nor is it to be understood that it is any defense in bankruptcy that the petitioner is the only creditor, or that he has an adequate remedy at law or in equity in the state or federal courts. The bankrupt law protects all creditors, and is additional to other remedies in all cases to which it applies.][4]

4. It is no defence in bankruptcy that the petitioner is the only creditor, nor that he has an adequate remedy at law or in equity in the state or federal courts. The bankrupt law protects all creditors, and is additional to other remedies in all the cases to which it applies. This creditor alleges in his petition, and has proved to my satisfac-

---

[3][From 4 N. B. R. 178, (Quarto, 145.)]

[4][From 3 Amer. Law T. 281.]

tion that his security falls short by more than two hundred and fifty dollars, and I must hold him entitled to proceed.

5. Have the acts of bankruptcy been established in evidence? It appears that W. B. Alexander has conveyed a homestead of some considerable value, and which was his whole property, to his wife. The effect necessarily is to delay creditors, and the intent ought to be presumed. The defendant testifies that his only purpose was to give his wife a home, and that the petitioner's debt was not in his mind at the time. But he was not in trade; there was no one but this creditor against whom the homestead needed protection, and the intent to give his wife a' clear homestead necessarily involves the intent that this creditor should not reach it. I have often decided that the conveyance of the whole property of a trader to a pre-existing creditor affords a very violent presumption of a fraudulent intent. And a gift of the whole estate of any debtor is per se fraudulent. In the case of the son the evidence is not so clear that he had anything to convey. But considering that by the statute of frauds of the commonwealth parol evidence could not be admitted to prove such a trust as is here relied on, so that in case of attachment before the conveyance was made, the beneficial interest would be conclusively held to be in the defendant, I doubt if he ought to be admitted to show these alleged facts, even on the question of intent. But if the evidence is received, still the peculiar circumstances of the case seem to show that the defendant may have had some beneficial interest which he intended to withdraw from the grasp of his creditors; such seems to be a fair inference from the time and mode of the conveyance. The father and son made their deeds near about the same time, which was soon after the payment of one of the annual notes, and it must then have been evident to them that the stock in trade had been reduced in value below the amount of the mortgage debt; there were no other creditors and no apparent adequate motive for the acts, excepting the wish to confine the mortgagee to the property secured to him, and I cannot but think it a fair inference of fact, independently of legal presumptions, that the real intent was to delay and hinder the petitioner.

6. It was shown that the petitioner had acted in a harsh and even oppressive manner towards the defendant James, in respect to the foreclosure of the mortgage. This evidence was admitted only for its bearing upon the credibility of the petitioner, who was a witness in the case. It cannot affect the merits of this petition. I may, however, be permitted to observe that this seems to be a case in which the parties would do well to compromise the matter, by giving the petitioner adequate security for his debt. It is unfortunately true that the expenses in bankruptcy bear a. large proportion to that part

of the petitioner's debt which remains unsecured. Still it is not a matter of discretion but of strict right that he should be permitted to proceed here if he chooses to do so. Adjudication ordered.